**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

IN RE:

ELEANOR A. ORMISTON,

        Debtor.

Filed / Docketed
July 9, 2010

Case No. 10-10251-M
Chapter 7

## MEMORANDUM OPINION

The issue before the Court today is whether the debtor abandoned her Oklahoma homestead

when she moved to Switzerland.  At trial, the Court was presented with two very different stories:

one told by the debtor and one told by the documentary evidence.  In order to reach a decision, the

Court must decide which of these two sources is the most credible.  The following findings of fact

and conclusions of law are made pursuant to Bankruptcy Rule 7052, which is made applicable to

this contested matter by Bankruptcy Rule 9014.

### Jurisdiction

The Court has jurisdiction over this bankruptcy case pursuant to 28 U.S.C.A. § 1334(b).[1] The

case has been properly referred to this Court pursuant to 28 U.S.C.A. § 157(a).  Disputes regarding

the validity of a claimed exemption are core proceedings as defined by 28 U.S.C.A. § 157(b)(2)(B).

### Findings of Fact

On January 29, 1976, Allen Ormiston ("Mr. Ormiston") and Eleanor Ormiston ("Mrs.

Ormiston") (collectively referred to as "the Ormistons") purchased a home located in Tulsa,

Oklahoma with a street address of 2246 East 48th Street, Tulsa, Oklahoma (the "Property").[2] The

Ormistons made the Property their home until the youngest of their children graduated from high

---

[1]  Unless otherwise noted, all statutory references are to sections of the United States Bankruptcy Code, 11 U.S.C.A. § 101 *et seq*.

[2]  *See Docket No. 21, Exhibit "A."*

school.

Mr. Ormiston was a petroleum engineer.  His work often required that he remain outside of the United States for extended periods of time.  In January of 1997, the Ormistons leased an apartment located in Geneva, Switzerland (the "Apartment").[3]  The lease term commenced on April 16, 1997, and remains in full force and effect.  Mrs. Ormiston continues to reside in the Apartment, and by her own testimony has lived there continuously since at least the summer of 2008.  The Apartment is furnished with furniture owned by Mrs. Ormiston.[4]

In 1999, Mr. Ormiston began experiencing symptoms of declining mental health.  He was diagnosed with frontal lobe dementia in 2000.  For some period of time after his diagnosis, the Ormistons remained in Switzerland and lived in the Apartment.  Mrs. Ormiston testified that Mr. Ormiston remained in Geneva because it allowed him access to superior medical treatment.  In July of 2008, as a result of his worsening condition, Mr. Ormiston was placed in a residential nursing facility in Muskogee, Oklahoma.  He remained there until his death on January 28, 2010.  After Mr. Ormiston was placed in the nursing facility, Mrs. Ormiston continued to live at the Apartment.[5]  At the time of Mr. Ormiston's death, Mrs. Ormiston was in Geneva, living in the Apartment.  She did not return to the United States until early March of 2010.

According to Mrs. Ormiston, she remains in Geneva to complete certain educational requirements, finish writing a book, and tend to the affairs of Mr. Ormiston.  Mrs. Ormiston testified

---

[3] *Trustee Exh. 9.*

[4] Mrs. Ormiston described the furniture in the Apartment as "temporary," notwithstanding the fact that she has leased the Apartment for more than thirteen years.

[5] The Court presumes that Mrs. Ormiston returned to Oklahoma to assist in the placement of Mr. Ormiston into the nursing facility.  The record is not clear on this point.

that she hopes to leave Geneva and return to Tulsa on a permanent basis by the end of 2010.  She

also testified that she resided in Geneva during all of 2009, returning to Oklahoma on sporadic

occasions.  Mrs. Ormiston further testified that when she returned to Oklahoma, she either lived at

the Property or stayed with one of her adult daughters.  Based upon documentary evidence submitted

to the Court, Mrs. Ormiston used the mailing address of the Apartment for her monthly statements

from F & M Bank, American Express, Bank of America, and Chase Bank.[6]  Although Mrs. Ormiston

testified that she received other mail at the Property, she provided no documentary evidence to that

effect.

On Schedule E of the Ormistons's 2008 Federal Income Tax Return (the "2008 Return"), the

Property is described as "rental real estate."[7]  In that schedule, Mrs. Ormiston made a representation

that neither she nor any member of her family used the Property for personal use during 2008 for

more than 14 days.  On several of the forms attached to the 2008 Return, Mrs. Ormiston indicated

that she is a resident of Switzerland.  For example, on Form 2555 (Foreign Earned Income), Mrs.

Ormiston indicated that she lived in Switzerland, using the Apartment as her address.  She stated that

Switzerland had been her "bona fide residence" since March 3, 1996, and continued to be her

country of residence through the date of the 2008 Return.  Mrs. Ormiston also indicated in Form

2555 that, although she spent some time in the United States in 2008, she spent no time in the United

States on business during that year.  She also represented that the duration of her stay in Switzerland

was "indefinite," and that she resided in Switzerland under the auspices of a "resident visa."

On February 4, 2010, Mrs. Ormiston filed a petition for relief under Chapter 7 of the United

---

[6] *Trustee Exhs. 5, 6, 7, and 8.*

[7] *Trustee Exh. 10.*

States Bankruptcy Code.  On the date of filing, Mrs. Ormiston was not in the United States: she was in Switzerland, living in the Apartment.  In her schedules, she has claimed the Property as her exempt homestead. The vast majority of her debts are credit card debts.  She also lists F & M Bank as a secured creditor holding a first mortgage on the Property.  Scott P. Kirtley ("Kirtley") is the duly appointed trustee in the case.

In her schedules, Mrs. Ormiston claims to be married, and makes no mention of her husband's death.[8]   Her schedule of expenses includes a monthly expense of $5,000 for nursing home care for Mr. Ormiston, as well as expenses for the rental of the Apartment, and television, telephone, cable, internet, electricity, and heating costs incurred in Switzerland.  In her statement of financial affairs, Mrs. Ormiston listed the Apartment as a prior residence, stating that she lived there from July 5, 2008, through December 31, 2008,[9] notwithstanding the fact that she lived in the Apartment during most if not all of 2009.  On February 26, 2010, Mrs. Ormiston filed amendments to her schedules.[10]  In those amendments, she added the lease on the Apartment as an unexpired lease.  Although she amended her Schedule J, Statement of Monthly Expenses, on that same date, she continued to show the monthly expense of $5,000 for her husband's skilled nursing care, notwithstanding his death almost one month prior to the execution and filing of the amendment.

The first meeting of creditors in this case was held on March 4, 2010.  Mrs. Ormiston returned to the United States in order to appear at this meeting.  Mrs. Ormiston failed to disclose her

---

[8]  The schedules reflect that Mrs. Ormiston signed them on February 4, 2010, the date the case was filed.  Her testimony was that she signed the schedules some time prior to her husband's death.  For reasons stated *supra*, the Court does not find Mrs. Ormiston to be a credible witness, and chooses to rely upon the dates contained in the schedules.

[9]  *Trustee Exh. 2.*

[10]  *Docket No. 9.*

husband's death to the Trustee at the first meeting of creditors, nor did she disclose that she was no longer incurring monthly expenses for his care as a result of his death. Her alleged reason for not disclosing this information was that she testified on the basis of the schedules, and, because those documents did not disclose her husband's death, she did not disclose it.  Mrs. Ormiston inferred that her failure to disclose her husband's demise and the change in expenses was based at least in part upon the advice of counsel.

Mrs. Ormiston also told the Trustee at the first meeting of creditors that she continued to use the Property as a rental property in 2009, renting it at times to a "Russian friend" at the rate of $600 per month.  At trial, Mrs. Ormiston described the arrangement as more in the nature of "house-sitting" by a friend, where the "rent" was more in the nature of payment of utilities.  Her trial testimony in this regard is a bit puzzling. She testified that she needed the services of a "house-sitter" to watch her house while she was away caring for her husband.  However, she also testified that she lived at the Apartment during most if not all of 2009.  Mr. Ormiston did not live in the Apartment in 2009.  He was at the nursing facility in Muskogee, Oklahoma, which is much closer to the Property than to the Apartment.

On March 23, 2010, Kirtley timely filed an exemption to Mrs. Ormiston's claim of the Property as her exempt homestead.[11]  Mrs. Ormiston filed her resistance to the objection on April 23, 2010.[12]  An evidentiary hearing on the objection and response was held on June 15, 2010.  At the conclusion of that hearing, the matter was taken under advisement.

To the extent the "Conclusions of Law" contain items that should more appropriately be

---

[11] *Docket No.20.*

[12] *Docket No.21.*

considered "Findings of Fact," they are incorporated herein by this reference.

## Burden of Proof

The burden of proof is upon Kirtley as the objecting party to show by a preponderance of the evidence that an exemption is not properly claimed.[13]  The homestead exemption statute should be liberally construed in favor of debtors to allow for the protection of the family and their home.[14]  The existence and extent of a homestead are questions for the trier of fact.[15]  Under Oklahoma law, the abandonment of a homestead must be proven by clear and convincing evidence.[16]

## Conclusions of Law

Pursuant to § 522 of the Bankruptcy Code, a debtor may exempt certain property from the bankruptcy estate. In a Chapter 7 bankruptcy case, all exemption entitlements (including that of homestead) are determined as of the date the case is filed.[17]  Oklahoma has chosen to opt out of the federal exemption scheme, limiting the exemptions available in bankruptcy cases to those allowed under state law.[18]  Oklahoma law provides for the following homestead exemption:

> A. Except as otherwise provided in this title and notwithstanding subsection B of this section, the following property shall be reserved to every person residing in the state, exempt from attachment or execution and every other species of forced sale for the payment of debts, except as herein provided:

---

[13]  *See* Fed. R. Bankr. P. 4003(c); *In re Hodes*, 402 F.3d 1005, 1010 (10th Cir. 2005).

[14]  *See In re Martin,* 875 P.2d 417, 421-22 (Okla. 1994).

[15]  *In re Kretzinger,* 103 F.3d 943, 946 (10th Cir. 1996).

[16]  *See State ex rel. Means v. Ten (10) Acres of Land*, 1994 OK 71, 877 P.2d 597, 601.

[17]  *See Mansell v. Carroll*, 379 F.2d 682, 684 (10th Cir. 1967); *see also In re Klaus,* 228 B.R. 475, 478 (Bankr. N.D. Okla. 1999).

[18]   *See* § 522(b)(1); *see also* Okla. Stat. Ann. tit. 31, § 1(B) (West 2009).

    1.  The home of such person, provided that such home is the principal residence of such person[.][19]

Debtors are entitled to exempt one homestead per family.[20]  The effect of a valid exemption is to take the property at issue and remove it from the bankruptcy estate, thereby placing it beyond the reach of creditors.  Non-exempt property remains part of the bankruptcy estate, and may be liquidated by a Chapter 7 trustee in order to pay creditors.

In order to qualify as a homestead for exemption purposes, two requirements must be met: (1) there must be a clear intent to make certain property a homestead as expressed by "overt acts of preparation in the erection of improvements and in preparation of the land for the home," and (2) the property must be occupied without undue postponement after the overt acts of preparation or a good faith attempt at occupancy must be made.[21]  In order to change from one homestead to another there must be a clear intent to repudiate and abandon the old homestead.[22]  Each of these matters are questions of fact to be decided by the trier of fact.[23]

The Court has little doubt that when the Ormistons purchased the Property in 1976, they made it their home and their homestead.  Things began to change no later than 1997.[24]  At that time,

---

[19]  Okla. Stat. Ann. tit. 31, § 1(A)(1) (West 2009).

[20]  *See Glaze v. Drawver*, 117 P.2d 544, 546 (Okla. 1941).

[21]  *See In re Jones*, 107 B.R. 350, 351-352 (Bankr. E.D. Okla. 1989).

[22]  *See In re Simpson*, 206 B.R. 230, 232 (Bankr. E.D. Okla. 1997).

[23]  *See In the Matter of Neis,* 723 F.2d 584, 589 (7th Cir. 1983); *see also In re Bradshaw*, 125 B.R. 782, 784-785, (Bankr. E.D. Wis. 1991).

[24]  The evidence is a bit inconsistent on the exact date that the Ormistons moved to Switzerland.  The 2008 tax return indicates that the Ormistons became "bona fide residents" of Switzerland in March of 2006.  The lease for the Apartment has an effective date of April 16, 1997.  Mrs. Ormiston testified that she stayed at the Property until the last of her children

with the children grown and the nest emptied, the Ormistons leased the Apartment.  The question

is whether the Ormistons, or, specifically, Mrs. Ormiston, abandoned the Property as their

homestead prior to the filing of this bankruptcy case.

Abandonment of a homestead is an issue that has been well litigated in and thoroughly

discussed by the Oklahoma courts.

> It is the established rule in this state that when the homestead, [sic] character once
> attaches to land it continues to be the homestead until the owner voluntarily changes
> its character, by disposing of the property, or by leaving with intention, or forming
> such intention after leaving, of not returning and occupying it as a homestead.
> Temporary absence from the homestead does not constitute abandonment where
> there exists a definite fixed intention to return.
>
> . . .
>
> On the question of abandonment of homestead, the intention to abandon is the
> controlling fact to be determined, and whether a homestead has been abandoned is
> a question of fact, ascertainable from the circumstances surrounding the particular
> transaction, to be established in each case by clear and convincing evidence.  *Lane
> v. Amis Bros.*, 171 Okl. 593, 43 P.2d 73.[25]

Establishing abandonment of an Oklahoma homestead is no easy task.

In *Kunauntubbee v. Greer*,[26] a quiet title action, the plaintiffs, a husband and wife, originally

established the property at issue as their homestead in 1911.  In 1919, the plaintiffs and their

children moved into the home of the husband's mother and leased the alleged homestead to a third

party.  Plaintiffs returned to the homestead in 1927, but soon moved back to the husband's mother's

property when she died in 1928.  With the exception of a temporary move, the plaintiffs resided

---

graduated from high school in 1997.  For purposes of this decision, the Court need not determine
the exact date that the Ormistons began to live in Switzerland.

[25] *Alexander v. Love County Nat'l Bank*, 223 P.2d 363, 365 (Okla. 1950).

[26] 323 P.2d 725 (Okla. 1958).

there until 1946, when they moved to Texas.  The husband then leased the alleged homestead property for a period of ten years, and eventually deeded the property by warranty deed to the defendant in the quiet title action, but without his wife's signature.

In 1949 and 1950, the plaintiffs claimed a homestead exemption on property that they purchased in Texas, and signed affidavits to that effect.  The deputy tax assessor in Texas also testified that he told the plaintiffs that if they claimed a homestead in Texas, such a claim would eliminate any other homestead claim they may have had.  In the quiet title action, the trial court also heard evidence from third parties that the plaintiffs stated that they never intended to return to Oklahoma.  On appeal, the Oklahoma Supreme Court found that all of these factors combined were sufficient to support the ruling of the trial court that the plaintiffs had abandoned the Oklahoma homestead.

In *Alexander v. Love County Nat'l Bank*,[27] the bank attempted to garnish funds that Alexander alleged were the proceeds from the sale of his homestead.  Alexander established an Oklahoma homestead in 1915.  In 1929, Alexander moved to Lubbock, Texas, then to Clovis, New Mexico one year later.  In 1934, Alexander and his sons established a grocery business, which they operated continuously through December of 1947.  In 1944, Alexander's sons bought a house for him in Clovis, where he and his wife lived.  That same year, Alexander filed an affidavit with the New Mexico election board stating that he was a resident of New Mexico.  Alexander's wife died in August 1946, and was buried in Clovis.  In 1947, a judgment creditor attempted to levy upon oil and gas revenues from the property.  Alexander claimed the monies as exempt proceeds of his homestead.  The trial court rejected the claim of homestead.  On appeal, the Oklahoma Supreme

---

[27]  223 P.2d 363 (Okla. 1950).

Court noted that

> In the case at bar Alexander has been absent from the state for twenty years and left with the hope that the health of his wife would improve to where he could return. This contingency did not occur, and by reason of her death will not. These facts, in connection with his having established a business, a new home, and becoming a legal voting resident, the burial of his wife there (Clovis, New Mexico) and continuing to reside there after her death with no plans to return, all indicate more than a temporary absence with intent to return to and occupy the premises as a homestead, and are indicative of an intent to abandon it.[28]

The Supreme Court affirmed the decision of the trial court, allowing the finding of abandonment to stand.

The evidence before the Court in this case tells two very different stories. According to Mrs. Ormiston, she has always considered the Property her home. She returns to Oklahoma sporadically and sometimes, but not always, lives at the Property while in Oklahoma. Even though she admits she does not live there now and has not lived there anytime since the middle of 2008, she contends that she will return to the Property at the end of this year, and that she has always intended to do so.

The documentary evidence tells a different story. According to Form 2555 of her 2008 Return, Mrs. Ormiston left Oklahoma in 1996.[29]  In her 2008 Return, Mrs. Ormiston repeatedly states that she is a "bona fide resident" of Switzerland, and has been so since March 3, 1996. She lives in Switzerland using a resident visa. All of the bills provided to the Court were sent to Mrs. Ormiston at the Apartment. Her 2008 Return contains the assertion that she uses the Property as a rental property, and did not live in the Property for more than fourteen days in 2008. All of these

---

[28]  *Id.* at 365-366.

[29]  *Trustee's Exh. 10* at p. 22.

statements are indicative of an abandonment of the Property as a homestead.  Indeed, a review of the 2008 Return and the bills that were being sent to Mrs. Ormiston at the Apartment leads to the conclusion that Mrs. Ormiston has lived in the Apartment for the past 13 years, and considers herself a resident of Switzerland – this is most certainly what she has told the United States government. The Court is thus forced to choose between Mrs. Ormiston's testimony and the story told by the documents.

The Court finds the documents more persuasive.  Having observed Mrs. Ormiston's demeanor on the witness stand, the Court finds her to be a less than compelling witness.  This conclusion is supported by the distinct inconsistency between the written documentation and her testimony, as well as her lack of candor in her bankruptcy schedules and at the first meeting of creditors.  For example, notwithstanding the fact that Mr. Ormiston died at least one week prior to the filing of the bankruptcy petition, Mrs. Ormiston failed to disclose this fact and continued to claim expenses relating to his illness on her bankruptcy schedules.  Even when she amended those schedules almost one month after her husband's death, she did not disclose the change in expenses or the fact of his death to the Trustee, the creditors in this case, or the Court.  She did not provide this information at her first meeting of creditors.  The Court finds that the documents tell the true story in this case.  The true story is that Mrs. Ormiston lives in Switzerland, has done so since at least 1997 and has abandoned the Property as her homestead.

To some, this may seem a harsh result.  The Court is well aware that the homestead exemption is to be construed liberally for the protection of debtors.  However, the exemption is not without limits.  The purpose of the homestead exemption is to help ensure that a debtor has a place to live.  Property that has been abandoned as a home may not be claimed as a homestead.

## Conclusion

The objection to Debtor's claim of homestead exemption in the Property is sustained.  Debtor

may not claim the Property as exempt.  A separate judgment in accordance with this Memorandum

Opinion is entered concurrently herewith.

Dated this 9th day of July, 2010.

BY THE COURT:

TERRENCE L. MICHAEL
UNITED STATES BANKRUPTCY JUDGE

5892.3